UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>    v.<br>CESAR PEREZ,<br>    aka "Nas" and "Nose,"<br>ROLANDO VILLASENOR<br>    aka "Rollie" and "Dunkey,"<br>JORGE LLAMAS<br>    aka "George" and "Sosa,"<br>FRANCISCO ESPINOZA<br>    aka "Little Man," "Little Hand" and "Polo,"<br>ANTONIO AGUILERA<br>    aka "T-Bag" and "T,"<br>DANIEL TORRES<br>    aka "Danny," "Dirty" and "Dirt,"<br>FERNANDO VILLASENOR<br>    aka "Pugsley" "Pugs," "Fatboy" and "Fat<br>    ass,"<br>AMMER KARTOUM,<br>    aka "ATA"<br>CARLOS HISHMEH,<br>JUAN ROCHA,<br>HECTOR SIMENTAL<br>    aka "Monkey,"<br>GERARDO TORRES,<br>    aka "Nino" and "Lil' Dirt,"<br>OMAR LAST NAME UNKNOWN ("LNU"),<br>    aka "Jose Gaona" and "O,"<br>JESUS MEDRANO,<br>    aka "Chico" and Rammy,"<br>SANTOS PATINO<br>    aka "San," and<br>THOMAS GNIADEK, JR.<br>    aka "White Boy" | )<br>)<br>) No. 09 CR 669<br>)<br>) Violations: Title 21, United<br>) States Code, Section 846 and<br>) Title 18, United States Code,<br>) Section 2.<br>)<br>)<br>) JUDGE ZAGEL<br>)<br>) __UNDER SEAL__<br>)<br>) MAGISTRATE JUDGE KEYS<br>)<br>)<br>)<br>) BY<br>) F I L E D<br>)<br>) AUG - 6 2009<br>) 8-6-09<br>) MICHAEL W. DOBBINS<br>) CLERK, U.S. DISTRICT COURT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

The SPECIAL FEBRUARY 2008-2 GRAND JURY charges:

1.    Beginning in at least in or about 1999, and continuing to in or about late 2008,

at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere:

CESAR PEREZ,
aka "Nas" and "Nose,"
ROLANDO VILLASENOR
aka "Rollie" and "Dunkey,"
JORGE LLAMAS
aka "George" and "Sosa,"
FRANCISCO ESPINOZA
aka "Little Man," "Little Hand" and "Polo,"
ANTONIO AGUILERA
aka "T-Bag" and "T,"
DANIEL TORRES
aka "Danny," "Dirty" and "Dirt,"
FERNANDO VILLASENOR
aka "Pugsley" "Pugs," "Fatboy" and "Fat ass"
AMMER KARTOUM,
aka "ATA"
CARLOS HISHMEH,
JUAN ROCHA,
HECTOR SIMENTAL
aka "Monkey,"
GERARDO TORRES,
aka "Nino" and "Lil' Dirt,"
OMAR LNU,
aka "Jose Gaona" and "O,"
JESUS MEDRANO,
aka "Chico" and Rammy,"
SANTOS PATINO
aka "San," and
THOMAS GNIADEK, JR.
aka "White Boy,"

defendants herein, conspired with each other, with Pedro Flores and Margarito Flores, and

with others known and unknown to the Grand Jury, to knowingly and intentionally possess

-2-

with intent to distribute and to distribute a controlled substance, namely, five or more kilograms of mixtures and substances containing a detectable amount of cocaine, a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); and one kilogram or more of mixtures and substances containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

2.    It was part of the conspiracy that Pedro Flores and Margarito Flores (collectively, the "Flores Brothers") directed a drug-trafficking organization (the "Flores Organization"). The Flores Organization smuggled large quantities of cocaine and heroin into the United States; transported the cocaine and heroin to the greater Chicago, Illinois, area and elsewhere for distribution to others; and transported United States currency derived from the sale of cocaine and heroin ("cash narcotics proceeds") from the greater Chicago, Illinois, area and elsewhere to Mexico.

3.    It was further part of the conspiracy that sources of supply for the Flores Organization transported large quantities of cocaine and heroin into the United States from Mexico. For some deliveries, the Flores Organization received the narcotics in the greater Chicago, Illinois, area. For other deliveries, the Flores Organization received the narcotics in the greater Los Angeles, California area, where truck drivers for the Flores Organization, including AMMER KARTOUM and CARLOS HISHMEH, transported the narcotics to the greater Chicago, Illinois, area.

4.      It was further part of the conspiracy that the Flores Organization used several warehouse locations to unload shipments of narcotics in the greater Chicago, Illinois, area, including, but not limited to, the following:  (a) 7433 S. Sayre Avenue, Bedford Park, Illinois, a warehouse space rented by AMMER KARTOUM; (b) 4800 S. Central Avenue, Chicago, Illinois; and (c) 2121 S. Racine, Chicago, Illinois.

5.      It was further part of the conspiracy that after the narcotics were unloaded in the Chicago, Illinois, area, the Flores Organization stored the narcotics at various locations in the Chicago, Illinois, area, including the following locations: (a) 1272 Santa Fe Road, Romeoville, Illinois; (b) 14238 Napa Circle, Plainfield, Illinois; (c) 1926 W. Cullerton, Chicago, Illinois; (d) 1332 S. Indiana Avenue, Chicago, Illinois; (e) 1926 S. Prairie, Chicago, Illinois; (f) 2112 W. Erie, Chicago, Illinois; (g) 2121 S. Racine, Chicago, Illinois; and (h) 7946 82nd Court, Justice, Illinois.

6.      It was further part of the conspiracy that several members of the Flores Organization – including CESAR PEREZ, ROLANDO VILLASENOR, JORGE LLAMAS, ANTONIO AGUILERA, DANIEL TORRES, GERARDO TORRES, OMAR LNU, JESUS MEDRANO, SANTOS PATINO and other members of the Flores Organization – were responsible for some or all of the following: (a) unloading cocaine shipments; (b) delivering the cocaine to storage locations used by the Flores Organization; (c) separating cocaine deliveries into smaller multi-kilogram amounts to be distributed to customers of the Flores Organization; and (d) delivering cocaine to customers of the Flores Organization.

7.    It was further part of the conspiracy that the cocaine obtained by the Flores Organization was commonly "fronted" to wholesale customers, meaning the cocaine was provided to the customers with the understanding that the customers would make a complete payment for the cocaine after they resold the cocaine.

8.    It was further part of the conspiracy that CESAR PEREZ, ROLANDO VILLASENOR, JORGE LLAMAS, ANTONIO AGUILERA, DANIEL TORRES, GERARDO TORRES and OMAR LNU collected cash narcotics proceeds from customers of the Flores Organization and delivered this money to one of the individuals responsible for processing and packaging cash narcotics proceeds for shipment to Mexico.

9.    It was further part of the conspiracy that several members of the Flores Organization – including FRANCISCO ESPINOZA, FERNANDO VILLASENOR, HECTOR SIMENTAL, THOMAS GNIADEK, JR. and other members of the Flores Organization – were responsible for some or all of the following: (1) collecting and picking up cash narcotics proceeds from customers of the Flores Organization; (2) delivering this money to various storage locations used by the Flores Organization; (3) counting and packaging the money; (4) reporting receipts of the cash narcotics proceeds to the Flores Brothers; and (5) delivering the cash narcotics proceeds to individuals working for the Flores Organization's Mexican sources of supply and to trucks for transportation to Los Angeles, California. From Los Angeles, California, the cash narcotics proceeds were transported to Mexico.

10.   It was further part of the conspiracy that the Flores Organization stored and packaged cash narcotics proceeds at various stash locations in the Chicago, Illinois, area, including, but not limited to, the following locations: (a) 551 Phillipa Drive, Hinsdale, Illinois; (b) 421 Birchwood, Hinsdale, Illinois; (c) 7800 W. 100th Place, Palos Hills, Illinois; (d) 7020 W. 81st Street, Burbank, Illinois; (e) 909 W. Ohio, Chicago, Illinois; (f) 262 Trenton, Plainfield, Illinois; and (g) 2946 N. Wood, Chicago, Illinois.

11.   It was further part of the conspiracy that the Flores Organization used warehouses and other locations, including, but not limited to, 10117 Bode, Plainfield, Illinois, to install hidden compartments or "traps" in vehicles, which were used to transport narcotics and cash narcotics proceeds.

12.   It was further part of the conspiracy that certain members of the Flores Organization, including, but not limited to, JUAN ROCHA, were responsible for obtaining stash houses and other facilities used by the Flores Organization.  For example, JUAN ROCHA obtained the stash house located at 7946 82nd Court, Justice, Illinois.

13.   It was further part of the conspiracy that JESUS MEDRANO agreed to live at 7946 82nd Court, Justice, Illinois, while the premises was also being used by the Flores Organization to store kilogram quantities of cocaine, for the purpose of facilitating the distribution of the cocaine stored at that location.

14.   It was further part of the conspiracy that certain members of the Flores Organization, including, but not limited to, JUAN ROCHA and SANTOS PATINO, received

kilograms of cocaine from the Flores Organization for redistribution to their own customers.

15.    It was further part of the conspiracy that the Flores Organization maintained ledgers, in paper and electronic form, which tracked information relating to the Flores Organization's drug-trafficking activities, including, but not limited to, the following: (a) amounts of narcotics received from Mexican sources of supply; (b) cash narcotics proceeds sent to Mexican sources of supply; (c) amounts of narcotics delivered to customers of the Flores Organization; (d) the courier or couriers responsible for particular deliveries to customers; (e) cash narcotics proceeds received from customers; and (f) payments to members of the Flores Organization.

16.    It was further part of the conspiracy that the defendants and their co-conspirators did conceal and hide, and cause to be concealed and hidden, the purposes and the acts done in furtherance of the conspiracy, and did use coded language, counter-surveillance and other means to avoid detection and apprehension by law enforcement authorities.

In violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## <u>FORFEITURE ALLEGATIONS</u>

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

1.      The allegations of the indictment are re-alleged and fully incorporated herein for the purpose of alleging forfeiture to the United States pursuant to Title 21, United States Code, Section 853.

2.    As a result of their violations of Title 21, United States Code, Section 846 of

the foregoing indictment,

CESAR PEREZ,
aka "Nas" and "Nose"
ROLANDO VILLASENOR
aka "Rollie" and "Dunkey,"
JORGE LLAMAS
aka "George" and "Sosa,"
FRANCISCO ESPINOZA
aka "Little Man," "Little Hand" and "Polo,"
ANTONIO AGUILERA
aka "T-Bag" and "T,"
DANIEL TORRES
aka "Danny," "Dirty" and "Dirt,"
FERNANDO VILLASENOR
aka "Pugsley" "Pugs," "Fatboy" and "Fat ass"
AMMER KARTOUM,
aka "ATA"
CARLOS HISHMEH,
JUAN ROCHA,
HECTOR SIMENTAL
aka "Monkey,"
GERARDO TORRES,
aka "Nino" and "Lil' Dirt,"
OMAR LNU,
aka "Jose Gaona" and "O,"
JESUS MEDRANO,
aka "Chico" and Rammy,"
SANTOS PATINO
aka "San," and
THOMAS GNIADEK, JR.
aka "White Boy,"

defendants herein, shall forfeit to the United States, pursuant to Title 21, United States Code,

853(a): (1) any and all property constituting and derived from any proceeds the defendants

obtained, directly and indirectly, as a result of the violations; and (2) any and all property

used, and intended to be used, in any manner or part, to commit and facilitate the commission

of the offenses charged in the indictment.

3.     The interests of the defendants subject to forfeiture pursuant to Title 21, United States Code, Section 853, include, but are not limited to:

United States Currency:

    a.     Any United States currency representing the proceeds of the narcotics distribution organization, totaling no less than $1,823,415,000;

Motor Vehicles:

    b.     2007 Nissan Murano, VIN JN8AZ08W07W638358, seized from 551 Phillippa, Hinsdale, Illinois on or about October 29, 2008;

    c.     2004 Kenworth semi-tractor, VIN 1XKWDB9X74J053055, seized from CARLOS HISHMEH on or about May 19, 2009;

    d.     2007 Nissan Murano, VIN JN8A208W27W605006, seized from THOMAS GNIADEK, JR. on or about April 14, 2009;

4.     If any of the forfeitable property described above, as a result of any act or omission by the defendants:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the court;

    d.     has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of substitute property, including but not limited to the following, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c):

<u>Real Property</u>:

  a.  the property located 647 Poplar, Romeoville, Illinois; and

  b.  the property located at 9006 Deerwood, Palos Hills, Illinois.

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY